UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNIE DAVIS,

    Plaintiff,                                       Hon. Robert J. Jonker

v.                                                        Case No. 1:10-CV-1247

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security granting in part and denying in part Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 42 years of age on the date his insured status expired. (Tr. 20, 102). He successfully completed high school, but has no past relevant work. (Tr. 24). Plaintiff performed factory work from 1979 through 1991, but was incarcerated from 1993 through 2005. (Tr. 24, 135).

Plaintiff applied for benefits on March 21, 2006, alleging that he had been disabled since September 25, 1989, due to back problems and COPD. (Tr. 100-06, 134). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 66-99). On September 4, 2008, Plaintiff appeared before ALJ James Prothro II, with testimony offered by Plaintiff and vocational expert, James Lozer. (Tr. 26-65). In a written decision dated November 17, 2008, the ALJ determined that Plaintiff was not disabled prior to the expiration of his insured status. (Tr. 18-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 1996. (Tr. 20). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's lumbar spine, taken on October 2, 1989, revealed "very minor L4/5 degenerative changes." (Tr. 200). On October 25, 1989, Plaintiff participated in a CT scan of his lumbar spine the results of which revealed "a large bulging disc...at the L4/5 level." (Tr. 197).

On December 21, 1989, Plaintiff was examined by Dr. C.R. Alderdice. (Tr. 205). The results of a neurological examination were "near normal" and the doctor concluded that Plaintiff's condition was "improving." (Tr. 205). The doctor concluded that Plaintiff was able to "return to work with some restrictions." (Tr. 205). Dr. Alderdice did not, however, articulate what restrictions should be imposed on Plaintiff.

On February 14, 1990, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed "degenerative change of the L4/5 disc with left central disc herniation." (Tr. 206).

On April 9, 1990, Plaintiff was examined by Dr. Jonathan Hopkins. (Tr. 217-19). Plaintiff reported that he was experiencing "a lot" of back pain which radiated into his left lower extremity. (Tr. 217). Plaintiff exhibited limited range of spinal motion and straight leg raising was positive, but Plaintiff was "neurologically...intact." (Tr. 218). Dr. Hopkins concluded that Plaintiff "needs to be continued on light duty work" and should participate in physical therapy. (Tr. 219).

The results of an August 7, 1990 examination revealed "radiographical and neurophysiological [findings] compatible with a left lumbo-sacral radiculopathy." (Tr. 222). The doctor also observed that Plaintiff "has had minimal improvement with the conservative treatment" and should consider surgery. (Tr. 222).

On October 19, 1990, Plaintiff participated in an MRI examination of his thoracic spine the results of which were "normal." (Tr. 225). On September 25, 1992, Plaintiff participated in a lumbar myelogram examination the results of which were "highly suggestive of a disc herniation at the L2/L3 and L4/L5 levels." (Tr. 251).

On October 16, 1992, Dr. Jonathan Hopkins performed surgery on Plaintiff's lumbar spine. (Tr. 280-81). Specifically, Dr. Hopkins performed a "semi-hemilaminectomy at L4/L5 on the left with excision of herniated disc and semi-hemilaminectomy at L2/L3 on the left with excision of herniated disc." (Tr. 280).

On November 23, 1992, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed no evidence of recurrent disc herniation or central stenosis. (Tr. 283). Treatment notes dated December 22, 1992, reveal that Plaintiff "walks with a completely natural gait" and "can walk on his heels and toes in no apparent discomfort and no limp." (Tr. 289). Dr. Hopkins reported that Plaintiff "does indeed continue to improve" and the doctor "released [Plaintiff] to start some more strenuous exercises now through P[hysical] T[herapy]." (Tr. 289).

On March 8, 1993, Plaintiff was examined by Dr. Hopkins. (Tr. 287). Plaintiff walked with "a fairly natural gait" and was able to "walk on his heels and toes and do a deep knee bend with no apparent weakness." (Tr. 287). An examination of Plaintiff's back revealed no evidence of muscle spasm. (Tr. 287). Dr. Hopkins reported that Plaintiff "certainly is doing better" following surgery. (Tr. 287).

On September 20, 1993, Plaintiff reported that he "feels good as long as he doesn't overexert himself." (Tr. 360). X-rays of Plaintiff's lumbosacral spine, taken on October 25, 1993, revealed "narrowing of the L4/5 intervertebral disc space with mild dorsal spondylosis present." (Tr.

310). There was, however, "no spondylolysis nor spondylolisthesis...present" and "bony alignment remain[ed] intact." (Tr. 310). Treatment notes dated November 2, 1994, reveal that Plaintiff's back pain was "stable." (Tr. 346).

On May 3, 1995, Plaintiff was examined by Dr. Harish Rawal. (Tr. 382). Plaintiff reported that he was experiencing "chronic intermittent back pain with intermittent leg pain." (Tr. 382). The doctor observed that Plaintiff was in no acute distress and straight leg raising was negative. (Tr. 382). Plaintiff "walk[ed] straight" and there was no evidence of "any localizing weakness." (Tr. 382).

Treatment notes dated January 28, 1996, reveal that Plaintiff "is able to go to the weight pit (lifts & does "dips"), does push-ups, walks, etc." (Tr. 337). Treatment notes dated January 29, 1996, indicate that Plaintiff was restricted from "lifting greater than 20 pounds." (Tr. 338). On February 23, 1997, Plaintiff reported to his care providers, "I'm doing fine." (Tr. 322).

On December 19, 2005, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "moderate to severe" degenerative disc disease. (Tr. 394-95). On January 5, 2006, Dr. Hopkins reported that he "would recommend that [Plaintiff] be re-trained for a position where he did not have to do competitive bending and did not have to lift more than 20 pounds on a repetitive basis, and no more than 30 pounds ever." (Tr. 398).

On October 31, 2006, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed the following:

> Vertebral bodies maintain stable alignment and height. There are no suspicious marrow signal abnormalities. There are no areas of pathologic enhancement. There is intervertebral disc space narrowing and disc desiccation from L2/3 through L4/5. The conus medullaris is positioned at L1/2 and is unremarkable.

6

(Tr. 525). This examination also revealed a "mild" disc bulge at L2/3 and "moderate" disc bulges at L3/4 and L4/5. (Tr. 525). The doctor concluded that Plaintiff was experiencing "multilevel changes of degenerative disc disease." (Tr. 525).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential process, Plaintiff bears the burden of proof through step four, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from: (1) status post hemilaminectomy at L2-3 and L4-5 with back pain and lower extremity pain; and (2) chronic obstructive pulmonary disease, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-21). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date his insured status expired, Plaintiff retained the capacity to perform the full range of light work.[2] (Tr. 21-24).

The ALJ determined that Plaintiff possessed no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The vocational expert testified that there existed approximately 38,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 62). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

        a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff first asserts that the ALJ erred by failing to afford controlling weight to the opinions expressed by Dr. Roland Stephens, Dr. Bryan Visser, and Dr. Jonathan Hopkins. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial

9

evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

While Plaintiff invokes the treating physician doctrine, he has failed to identify a single opinion from Dr. Stephens to which the ALJ failed to properly defer. On January 14, 1991, and again on February 4, 1991, Dr. Stephens opined that Plaintiff was "disabled." (Tr. 228, 266). The ALJ need not defer to such "opinions," however, because the ultimate determination of disability is a matter left solely to the commissioner. *See* 20 C.F.R. § 404.1527(e)(1).

While not specifically addressed by Plaintiff, the Court notes that on June 24, 1992, Dr. Stephens reported that Plaintiff suffered from the following limitations: "no heavy lifting or bending - prolonged sitting or standing." (Tr. 241). First, given the vague nature of this particular opinion, it is impossible to determine whether such even conflicts with the ALJ's RFC determination. More importantly, this particular opinion was expressed *before* Plaintiff underwent back surgery. As detailed above, Plaintiff's surgery was successful and enabled him to subsequently engage in significant physical activity, including lifting weights, walking, and performing push-ups. Moreover, in February 1997, more than six months after the expiration of his insured status, Plaintiff reported that he was "doing fine." While Plaintiff's back impairment subsequently worsened, such did not occur until many years after the expiration of his insured status.

On August 29, 1990, Dr. Visser reported that "it does not appear" that Plaintiff would be able to return to heavy factory work. (Tr. 223). The doctor, however, further stated that "I cannot come up with specific restrictions but we can state that he needs to avoid a job which there is going to be prolonged standing, prolonged sitting and with prolonged flexion of the hips." (Tr. 223). The doctor expressly stated that he was unable to articulate any "specific restrictions" vis-a-vis Plaintiff's ability to perform work activities. Thus, such a statement does constitute an opinion to which the ALJ was obligated to defer or specifically address. To the extent that the doctor opined that Plaintiff

11

should avoid prolonged standing, sitting, flexion of the hips, again, such is so vague that it is not possible to determine whether such even conflicts with the ALJ's RFC determination. Furthermore, as with the "opinions" discussed immediately above, this particular opinion was expressed *before* Plaintiff underwent successful back surgery.

On February 5, 1993, Dr. Hopkins reported that Plaintiff was unable to perform "heavy labor" and that he should instead retrain "for a different job." (Tr. 286). The doctor also reported that Plaintiff should presently "avoid lifting over 10-15 [pounds] on a regular basis, and not be required to bend or twist at the waist." (Tr. 286). Plaintiff asserts that the ALJ "misconstrued this medical evidence." As the ALJ observed, these particular limitations constituted, at the time, "a reasonable restriction since it had been only four months since his surgery." (Tr. 23). As the ALJ further concluded, however, given the success of Plaintiff's surgery and the extent of activities in which he was thereafter able to engage, the opinion in question did not constitute a permanent limitation, but was instead only a temporary limitation necessitated by Plaintiff's surgery. In light of the evidence detailed herein, this assessment is supported by substantial evidence.

In sum, the ALJ's evaluation of the opinions expressed by Dr. Stephens, Dr. Visser, and Dr. Hopkins is supported by substantial evidence.

b.     Plaintiff is not Entitled to a Remand

Plaintiff also asserts that he is entitled to a remand so that certain evidence, first submitted in this Court, can be considered by the Commissioner. As is well recognized, however, this Court cannot consider any evidence that was not first presented to the ALJ. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506,

512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question consists of a December 5, 2006, deposition of Dr. Hopkins, copies of grievances that Plaintiff filed while incarcerated, and medical records from the time period during which Plaintiff was incarcerated. As Plaintiff concedes, this evidence, all of which pre-dates the ALJ's decision by several years, is not new. Moreover, Plaintiff has failed to establish that this evidence is material or that there exists good cause for his failure to timely submit the evidence in question to the ALJ.

To satisfy the "good cause" requirement, Plaintiff must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Hollon*, 447 F.3d at 485. Plaintiff offers no justification for his failure to timely submit the evidence in question. While Plaintiff is presently proceeding pro se, he was represented by counsel at the administrative hearing. In fact, counsel was appointed for Plaintiff more than eleven months before the administrative hearing. (Tr. 80). At the administrative hearing, counsel asserted to the ALJ that all the "relevant records" had been submitted. (Tr. 30). The Court finds that Plaintiff has failed to establish good cause for his failure to timely submit the evidence in question.

However, even if the Court were to find that Plaintiff had established good cause, the result is the same as the evidence in question does not satisfy the materiality requirement. The evidence in question simply mirrors the evidence detailed above. Specifically, this evidence reveals that prior to the expiration of his insured status, Plaintiff retained the ability to perform work which existed in substantial numbers and, moreover, that while his back impairment subsequently worsened such did not occur until several years after the expiration of his insured status. Thus, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

        c.      The Court Discerns no other Error

Finally, while the Court must read Plaintiff's pro se pleadings indulgently, it cannot act as counsel for Plaintiff or attribute to Plaintiff arguments which do not find their genesis in Plaintiff's pleadings. Nevertheless, the Court has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any obvious defects or deficiencies. This review revealed nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court concedes that Plaintiff may be *presently* disabled, the ALJ's determination that Plaintiff was not disabled prior to the expiration of his insured status is supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 21, 2012                     /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge